**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE EASTERN DISTRICT OF TENNESSEE**
**AT WINCHESTER**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HEATH OIL COMPANY, INC., | ) | Case No. 418-12323-SDR |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | Judge Shelley D. Rucker |

**PLAN OF REORGANIZATION OF HEATH OIL COMPANY, INC.**

**(A "Small Business Debtor") Containing "Adequate Information"**
**As Required by 11 U.S.C. § 1125**

Paul E. Jennings
Paul E. Jennings Law Offices, P.C.
805 South Church Street, Suite 3
Murfreesboro, TN 37130
Telephone:  (615) 895-7200
Facsimile:  (615) 895-7294
E-mail: paulejennings@bellsouth.net

Attorney for Debtor-in-Possession

Dated: March 25, 2019

Murfreesboro, TN 37130

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT WINCHESTER**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| HEATH OIL COMPANY, INC., | ) | Case No. 418-12323-SDR |
| | ) | Chapter 11 |
| Debtor-in-Possession. | ) | Judge Shelley R. Rucker |

**PLAN OF REORGANIZATION FILED BY HEATH OIL COMPANY, INC.**
**(A "Small Business Case") Containing "Adequate Information"**
**As Required by 11 U.S.C. § 1125**

The Debtor and Debtor-in-Possession, Heath Oil Company, Inc., hereinafter referenced as the "Debtor" submits the following Plan of Reorganization, hereinafter referred to as the "Plan", as maybe further amended and/or modified pursuant to Sections 1121(a), 1122, 1123, and 1127(a) of Title 11 of the United States Code.  Debtor is engaged in the retail sales and servicing of tires for both commercial and individual customers, and in certain aspects of automotive repairs, doing business as Heath Automotive.

## ARTICLE 1

## INTRODUCTION

1.1     On May 28, 2018, the Debtor filed its voluntary petition initiating this case under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 101, et seq., in the United States Bankruptcy Court for the Eastern District of Tennessee.  From the filing of this case, the Debtor has continued its operation as Debtor-in-Possession pursuant to the provisions of §§ 1107 and 1108 of the Code.

1.2     Debtor is located at 501 1st Avenue S. W., Winchester, TN.

1.3     The Debtor is a Small Business Debtor as that term is defined in 11 U.S.C. § 101(51D).  Debtor is engaged in business activities.  Debtor is not engaged in the business of owning or operating real property.  As of the date of the order for relief the debts of the Debtor

was less than $2,000,000.00. The United States Trustee has not appointed a committee of unsecured creditors under Section 1102(a)(1).

1.4      This is a <u>Small Business Case</u> as that term is defined in 11 U.S.C. § 101(51C).

1.5      The Debtor files this Plan and will seek to provide herein "adequate information" as the term is defined in 11 U.S.C. § 1125(a)(1) and will seek a determination under 11 U.S.C. § 1125(f)(1) that a separate disclosure statement is not required. Thus, <u>a separate disclosure statement will not be filed.</u>

## ARTICLE 2

## DEFINITIONS

Unless the context otherwise requires (i) any capitalized term that is used in this Plan shall have the meaning set forth in this Article; (ii) terms stated in the singular shall include the plural and vice versa; (iii) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (iv) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (v) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (vi) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (vii) the word "herein", "hereof" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (viii) the rules of construction set forth in § 102 of the Bankruptcy Code shall govern construction of the Plan; and (ix) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any, that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to Cases filed on the Petition Date.

2.1      **"Administrative Bar Date"** means the first Business Day that is 20 days after the Effective Date.

2.2      **"Administrative Claim"** means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim.

2.3      **"Administrative Expense"** means any cost or expense of administration of this Case which are allowable under § 503(b) of the Bankruptcy Code, other than Bankruptcy Fees which are treated separately herein.

2.4      **"Allowed Claim"** means a Claim that has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (a) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (b) if no Proof of Claim was filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

2.5      **"Allowed Interest"** means an Interest that has not been disallowed and is not a Disputed Interest (a) with respect to which a Proof of Interest was timely filed or, (b) if no Proof of Interest was filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

2.6      **"The Bankruptcy Code, also referred to as the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA)"** means title 11 of the United States Code, as amended from time to time and effective as of the Petition Date.

2.7      **"Bankruptcy Court"** means the United States Bankruptcy Court for the Eastern District of Tennessee, Winchester Division or the United States District Court for the Eastern District of Tennessee to the extent it withdraws the reference over all or any portion of this Case pursuant to § 157(d) of title 28 of the United States Code.

3

2.8 **"Bankruptcy Fees"** mean all fees and charges assessed against the Estate under § 1930 of title 28 of the United States Code.

2.9 **"Bankruptcy Rules"** mean (a) the Federal Rules of Bankruptcy Procedure, and (b) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Eastern District of Tennessee, as are now in effect or hereinafter effective.

2.10 **"Bar Date"** means any date set by Order of the Bankruptcy Court, subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

2.11 **"Business Day"** means any day other than a Saturday, Sunday, or other day on which commercial banks in Chattanooga, Tennessee are authorized or required by law to close, or other Legal Holiday.

2.12 **"Case"** means this Case under Chapter 11 of the Bankruptcy Code commenced by the Debtor on the Petition Date and styled Heath Oil Company, Inc., Case No. 4:18-bk-12323-SDR.

2.13 **"Cash"** means lawful currency of the United States of America.

2.14 **"Class"** means a category of substantially similar Allowed Claims or Allowed Interests.

2.15 **"Confirmation"** means the entry of the Confirmation Order.

2.16 **"Confirmation Date"** means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

2.17 **"Confirmation Order"** means an Order confirming the Plan, as such may be amended and/or modified, pursuant to § 1129 of the Bankruptcy Code, in form and substance reasonably acceptable to the Debtor.

2.18 **"Consummation"** means assumption by the Debtor of all or substantially all of the property dealt with by the plan and the commencement of distributions under the plan.

2.19 **"Creditor"** means a holder of an Allowed Claim.

2.20 **"Cure Amount"** means any amount required, pursuant to § 365(b)(1)(A) and (B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an executory contract or unexpired lease for any actual pecuniary loss resulting from a default in respect of an executory contract or unexpired lease.

2.21 **"Debtor"** means Heath Oil Company, Inc., doing business at 501 1st Avenue S. W., Winchester, TN.

2.22 **"Deficiency Claim"** means, unless the holder thereof consents to different treatment or elects treatment in accordance with § 1111(b)(2) of the Bankruptcy Code and Bankruptcy Rule 3014, that portion of an Allowed Claim that exceeds the value of all Property in which the Estate has an Interest that is subject to a Lien securing such Allowed Claim.

2.23 **"Disbursing Agent"** means the Debtor.

2.24 **"Disclosure Statement"** means those provisions of this Plan designed to provide adequate information of a kind, and in sufficient detail, as far as is reasonably practicable in light of the nature and history of the Debtor and the condition of the Debtor's books and records to enable a hypothetical investor of the relevant class to make an informed judgment regarding the acceptance or rejection of the Plan.

2.25 **"Disputed Claim"** means:

(a) a Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed to the extent that any such objection has not been resolved by a Final Order;

(b) until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety, if, (i) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (ii) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent, unliquidated; or (iii) no corresponding Claim has been listed in the Schedules.

5

2.26    **"Effective Date"** means the 14th day following the Confirmation Date.

2.27    **"Estate"** means the Estate created on the Petition Date as set forth in § 541 of the Bankruptcy Code.

2.28    **"Final Order"** means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, certiorari proceeding, or other proceeding for review or rehearing.

2.29    **"Final Decree"** means that order to be entered upon application of the Debtor reporting the payments in the case and requesting the concluding and closing of the case for administrative purposes.

2.30    **"Interest"** means an Interest in the Debtor represented by Debtor's ownership interest in real and personal property.

2.31    **"Interest Holder"** means a holder of an Allowed Interest in the Debtor's property.

2.32     **Judicial Lien"** means a lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding.

2.33    **"Legal Holiday"** means a Legal Holiday as that term is defined in Rule 9006(a), Federal Rules of Bankruptcy Procedure.

2.34    **"Loan Documents"** mean any and all Loan Documents evidencing the terms of the debts of the Debtor.

2.35    **"Mortgaged Property"** means the property of the Debtor which is subject to executed and perfected security interest or valid and binding lease agreements.

2.36    **"Net Cash Flow"** means the gross revenues generated from the property of the estate less actual operating expenses, including taxes, insurance, debt service, ordinary

maintenance expenditures, reasonable and necessary capital expenditures, and a maintenance reserve.

2.37   **"Order"** means an order of the Bankruptcy Court.

2.38   **"Person"** means any natural person, corporation, limited or general partner or partnership, or governmental unit.

2.39   **"Petition Date"** means the date on which the Debtor commenced this Case by filing the voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

2.40   **"Plan"**  means this Plan of Reorganization or, as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

2.41   **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

2.42   **"Priority Claim"** means an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim or Bankruptcy Fees to the extent entitled to priority under § 507 of the Bankruptcy Code.

2.43   **"Priority Tax Claim"** means an Allowed Claim of a Governmental Unit of the kind specified in § 507(a)(8) of the Bankruptcy Code.

2.44   **"Professional"** means all attorneys, accountants, appraisers, auctioneers or other professional persons employed by the Debtor under § 327 of the Bankruptcy Code.

2.45   **"Proof of Administrative Claim"** means a request for payment of an Administrative Expense (including fees and expenses allowed under §§ 330 and 331 of the Bankruptcy Code of duly retained Professionals providing services in this Case) filed pursuant to § 503 of the Bankruptcy Code.

2.46    **"Proof of Claim"** means a proof of claim filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

2.47    **"Proof of Interest"** means a proof of interest filed pursuant to § 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

2.48    **"Property"** means the Real and Personal Property of the Estate as more fully outlined herein.

2.49    **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

2.50    **"Reorganized Debtor"** generally means the entity which shall assume or retain title to and control of the Debtor's assets upon Confirmation, and which shall assume or retain the Debtor's liability as provided herein.

2.51    **"Schedules"** means the schedules of assets and liabilities filed by the Debtor with the Bankruptcy Court in accordance with § 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

2.52    **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to § 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on Property in which the Estate has an interest or that is subject to set-off under § 553 of the Bankruptcy Code to the extent of the value of the claim holder's interest in the Estate's interest in such Property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to § 506(a) of the Bankruptcy Code.

2.53    **"Secured Creditor"** means any Person holding an Allowed Secured Claim within the meaning of § 506 of the Bankruptcy Code.

2.54    **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled under applicable non-bankruptcy law to priority over an otherwise Secured Claim.

2.55   **"Small Business Debtors"** mean a person engaged in commercial or business activities (including any affiliate or such person that is also debtors under this title and excluding a person whose primary activity is the business of owning or operating real property or activities incidental thereto) that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the petition or the date of the order for relief in an amount not more than $2,000.000.00 (excluding debts owed to one or more affiliates or insiders) for a case in which the United States Trustee has not appointed under section 1102(a)(1) a committee of unsecured creditors or where the court has determined that the committee of unsecured creditors is not sufficiently active and representative to provide effective oversight of the debtor.

2.56   **"Small Business Case"** means a case filed under Chapter 11 of this title in which the debtor is a small business debtor.

2.57   **"Statutory Lien"** means lien arising solely by force of a stature on specified circumstances or conditions, or lien of distress for rent, whether or not statutory, but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute.

2.58   **"Unsecured Claim"** means an Allowed Claim, including a Deficiency Claim, that is not an Administrative Claim, a Bankruptcy Fee, an Insured Claim, a Priority Claim, a Priority Tax Claim, a Secured Claim, a Secured Tax Claim or a Security Deposit.

2.59   **"Unsecured Creditor"** means any Person holding an Allowed Unsecured Claim against the Debtor for which there are no assets of the Debtor serving as security, but not including Priority Claims.

## ARTICLE 3

## <u>DEBTORS' PLAN  DISCLOSURES</u>

Debtor will provide information in this Plan with the purpose of providing to the Creditors and Interest Holders sufficient information to make an informed decision as to the acceptance or rejection of the Debtor's Plan.  The provided information will address two areas:

9

(1) a limited and general discussion of the provisions of the Bankruptcy Code, and the Federal Rules of Bankruptcy Procedure which are applicable to both the Debtor and the Creditors. This discussion is not a substitute for your reference to the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. Although not referenced or discussed herein, reference should be made to the Local Rules of Court for the Bankruptcy Court for the Eastern District of Tennessee for procedures governing actions filed by all parties. (2) Information will be given as to this Debtor's use of the Bankruptcy Code and the Rules, together with factual information as to the creditors, the claims in the bankruptcy estate, the assets of the estate, the classification of claims, the payment of the claims and the ability of the Debtor to make those payments.

There is no substitute for your independent evaluation of the information contained herein and your seeking the advice of your attorneys, accountants, or financial advisors. You may contact Paul E. Jennings, 805 South Church Street, Suite 3, Murfreesboro, TN 37130, telephone number (615) 895-7200, facsimile number (615) 895-7294 regarding the information contained herein, but you must not rely on information which is not contained in this Plan in making your decision as to the acceptance or rejection of the Debtors' Plan.

## ARTICLE 4

### GENERAL PROVISIONS

4.1    **Notice to Holders of Claims and Interest.**  This Disclosure Statement and the accompanying ballots are being furnished by the Debtor to its known Creditors and Interest Holders pursuant to § 1125(b) of the Bankruptcy Code in connection with a solicitation of acceptances of the plan of reorganization.

The disclosures made herein are to enable you, as a Creditor whose Claim is in a Class impaired under the Plan or as an  Interest Holder whose Interest is in a Class impaired under the Plan, to make an informed decision in exercising your right to accept or reject the Plan.

**THE DISCLOSURES CONTAIN IMPORTANT INFORMATION THAT MAY BEAR UPON YOUR DECISION TO ACCEPT OR REJECT THE PLAN PROPOSED BY THE DEBTOR. PLEASE READ THESE WITH CARE.**

**THIS PLAN HAS NOT BEEN APPROVED OR DISAPPROVED BY ANY BANKRUPTCY COURT, THE SECURITIES EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION NOR HAS THE SECURITIES AND EXCHANGE COMMISSION OR ANY STATE SECURITIES COMMISSION PASSED UPON THE FAIRNESS OR MERITS OF THE PLAN OR UPON THE ACCURACY OR ADEQUACY OF THE INFORMATION CONTAINED HEREIN. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.**

4.2    **Historical Information.**  The historical information appended to the Disclosure Statement as Exhibits have been prepared using Debtors' books and records and certain filings made with the Bankruptcy Court.  The estimates of Claims and Interests set forth herein may vary from the final amounts of Claims or Interests allowed by the Bankruptcy Court.  While every effort has been made to ensure the accuracy of all such information, unless noted otherwise, the information presented herein is unaudited and has not been examined, reviewed or compiled by the Debtor's accountant.

4.3    **Projections.**  The Projections appended to this Plan as Exhibits are a presentation of possible future events based on certain assumptions regarding the operations of the Debtor. The Projections were not prepared with a view toward public disclosure or compliance with the guidelines established by the Securities and Exchange Commission and were not prepared with a view towards compliance in all instances with the guidelines established by the American Institute of Certified Public Accountants regarding financial forecasts.  The Projections have not been prepared in accordance with generally accepted accounting principles in all instances.

While presented with numerical specificity, the projections are based upon a variety of assumptions which, although Debtor believes are reasonable, may not be realized, and are subject

to significant business, economic and competitive uncertainties and contingencies, many of which are beyond the control of the Debtor.  Consequently, the projections should not be regarded as a representation by the Debtor (or any other person) that the projections will be realized, and actual results may vary materially from those presented below.  Due to the fact that such projections are subject to significant uncertainty and are based upon assumptions which may not prove to be correct, neither the Debtor nor any other person assume any responsibility for their accuracy or completeness.

4.4     **Date of Disclosure.**  The statements contained in this Plan are made as of the date on the cover sheet, unless another time is specified herein.  The delivery of this Plan shall not create, under any circumstances, an implication that there has been any change in the facts set forth herein since the date hereof.

4.5     **Use of Disclosures.**  The Disclosures are intended for the sole use of Creditors and Interest Holders to make an informed decision about the Plan.  Each holder of a Claim or Interest should review the Disclosures and all exhibits hereto before casting a ballot.  Holders of Claims or Interests are urged to consult with their own legal and financial advisors.

4.6     **Conditional Approval of Disclosure Statement.**  Pursuant to 11 U.S.C. § 1125(f), in a Small Business Case, the Bankruptcy Court may determine that the Plan itself provides adequate information and that a separate disclosure statement is not necessary.  The section provides that: (i) the Bankruptcy Court may conditionally approve a Disclosure Statement subject to final approval after notice and a hearing; (ii) acceptances and rejections of a plan may be solicited based on a conditionally approved Disclosure Statement; and (iii) the hearing on the Disclosure Statement may be combined with the hearing on confirmation of the Plan.

Implementing the provisions of 11 U.S.C. § 1125(f), Rule 3017.1, Fed. R. Bankr. P. provides, that on or before conditional approval of the Disclosure Statement, the Bankruptcy Court shall:

"(1) fix a time within which the holder of claims and interest may accept or reject the plan;

(2) fix a time for filing objections to the disclosure statement;

(3) fix a date for the hearing on final approval of the disclosure statement to be held if a timely objection is filed; and

(4) fix a date for the hearing on confirmation".

The Debtor will file a motion with the Bankruptcy Court seeking conditional approval of its Disclosure Statement, with final approval to be obtained at the Confirmation Hearing.

4.7     **Solicitation of Votes.**  No solicitation of votes to accept or reject the Plan may be made except pursuant to this Disclosure Statement and § 1125 of the Bankruptcy Code.  As noted in paragraph 4.6 above, the Debtor will seek conditional approval of the disclosures made herein.  Solicitation of votes will be made based upon the conditional approval.   No Person has been authorized to use or promulgate any information concerning the Debtor or their business or the Plan, other than the information contained in this combined Plan and Disclosure Statement and the exhibits hereto.  You should not rely on any information relating to the Debtor or their business or the Plan other than that contained in this document and the exhibits hereto.

## ARTICLE 5

## <u>MISCELLANEOUS BANKRUPTCY CODE PROVISIONS</u>

5.1     **Confirmation of the Plan.**  Pursuant to § 1128 of the Bankruptcy Code, the Bankruptcy Court will schedule a hearing to consider Confirmation of the Plan, in the Courtroom, Second Floor, United States Courthouse and Post Office, 300 South Jefferson Street, Winchester, Tennessee, or such other venue as the Bankruptcy Court may order.  The Bankruptcy Court will direct that objections, if any, to Confirmation of the Plan be filed and served in the manner described herein.  An order fixing the hearing on confirmation and the time for objections to confirmation will be entered and served on each creditor.

5.2     **Confirmation Hearing.**  At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129(a) of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The Debtor intends to seek Confirmation of the Plan at the Confirmation Hearing.  In the event that any impaired Class of Claims does not accept the Plan, the Debtor intends to seek a "cramdown" of the Plan pursuant to § 1129(b) of the Bankruptcy Code.  **The Debtor believes that the Plan will satisfy all applicable requirements of § 1129(a) and § 1129(b) of the Bankruptcy Code.**

5.3     **Confirmation Order and Its Effect.**  With the entry of the Confirmation Order, pursuant to § 1141(d) of the Bankruptcy Code, except as otherwise provided in the Plan, the distributions provided for in the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims against the Interests in the Debtor or any of its assets or properties, including any Claim or Interest accruing after the Petition Date and before the Confirmation Date.  As of the Effective Date, all holders of Claims and Interest will be precluded from asserting any Claim against the Debtor or its assets or properties or other interest in the Debtor based on any transaction or other activity of any kind that occurred before the Confirmation Date except as otherwise provided in the Plan.  Confirmation will make the Plan binding upon the Debtor, their Interest Holders, all Creditors and other parties regardless of whether they have accepted the Plan.

5.4     **Retention of Professionals.**  Section 327(a) of the Bankruptcy Code provides that debtors, with the Court's approval, may employ one or more accountants, attorneys or other professional persons that do not hold or represent an interest adverse to the estate and that are disinterested persons to represent or assist a debtor in carrying out the duties under the Bankruptcy Code.  11 U.S.C. § 327(a).

Pursuant to the provisions of the Plan, three days prior to the Effective Date, each Professional must provide the Debtor with an estimate of the total amount of compensation and expenses for which the Professional intends to seek final compensation.  Pursuant to the terms of

14

the Plan, all Professionals retained by the Debtor must file final fee applications by the Administrative Bar Date (the first business day 60 days after the Effective Date). Section 330 of the Code sets the standard for the determination by the Bankruptcy Court of the appropriateness of fees to be awarded to Professionals retained by a debtor in a case under the Bankruptcy Code. In general, "bankruptcy legal services" are entitled to command the same competency of counsel as other cases. In that light, the policy of this section is "to compensate attorneys and other professionals serving in a case under title 11 at the same rate as the attorney or other professional would be compensated for performing comparable service other than in a case under title 11". 124 Cong. Rec. H11091 (Daily Ed. Sept. 28, 1978).

     5.5    **Bar Date.** The Bankruptcy Code and Rules permit the Court to enter an order fixing the deadline for the filing of Proofs of Claim. The time was fixed as October 9, 2018. Accordingly, distribution to creditors will be based upon claims filed on or before that date or as listed on the Scheduled filed by the Debtor, unless a different amount is fixed by the Court following objection, notice and a hearing.

     5.6    **The Automatic Stay.** Pursuant to § 362 of the Bankruptcy Code, the filing of a petition commencing a case under Chapter 11 of the Bankruptcy Code automatically operates as a stay (the "Automatic Stay"), applicable to all entities of, *inter alia*, (i) the commencement or continuation of a judicial, administrative, or other action against the debtors that was or could have been commenced before the commencement of the case, (ii) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case, or (iii) any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate. 11 U.S.C. § 362(a). The Automatic Stay is a principal form of relief offered a debtor under the Bankruptcy Code. The Automatic Stay provides a debtor with "breathing room" to propose, and hopefully confirm, a plan of reorganization.

5.7    **Monthly Reports.**  The Debtor is required to file monthly reports with the Bankruptcy Court detailing its operations during the pendency of the Chapter 11 case.  Copies of those reports are filed with the Office of the United States Trustee and are reviewed by that office as a part of the monitoring of the Chapter 11 case.  Debtor has filed monthly reports.

The Debtor will continue to timely file with the Bankruptcy Court and the United States Trustee monthly statements of operating expenses and income until the confirmation of this Chapter 11 case.  These reports have been and will be prepared by or under the supervision of the Debtor.

The monthly reports show the payment of substantially all of the Debtor's post-petition liabilities on a current basis from cash flow generated by the business.  The contents of the reports and the Debtor's expenditures will be discussed in detail herein.

## ARTICLE 6

## HEATH OIL COMPANY, INC.: HISTORY; BACKGROUND; OPERATION DURING CHAPTER 11

6.1    **The Debtor.**  The Debtor is a Subchapter S Corporation operating its business at 501 1st Avenue S. W., Winchester, TN.  The Debtor is engaged in the retail tire and automotive service business.

6.2    **Brief Summary of Historical "Heath Oil Company, Inc.".**  This business model changed substantially in January 2013 when most of the petroleum operation was divested while keeping a retail convenience store, a commercial fueling center, and beginning a logistical petroleum agreement with Tri-State Petroleum.

Gross revenues 2009 through 2012 were as follows:

| | |
|---|---|
| 2009 | $15,867,320 |
| 2010 | $13,870,250 |
| 2011 | $15,920,200 |
| 2012 | $17,557,030 |

16

Gross revenues 2013 through 2015 were as follows:

2013          $4,728,357
2014          $4,112,103
2015          $3,894,599

Please note that the Corporation fiscal year is from November 1 through the following

October 31.  Thus, fiscal year 2017 ended October 31, 2018.  Fiscal year 2018 will end October

31, 2019.

Fiscal Years 2016 and 2017 gross revenues were:

2016          $2,726,183
2017          $1,750,000  Approximated

During 2015, Heath Oil Company, Inc., took over the operation of Tullahoma Tire &

Brake when it declared Chapter 7 Bankruptcy.  We were the largest creditor and owned the

property.  In doing so I personally refinanced the real estate and Heath Oil Company, Inc. took on

additional operating costs that never became a profitable operation causing additional financial

stress.

6.3    **Operation During Chapter 11.**  At the end of May 2018, the Tullahoma store was

closed.  The building and real estate was listed for sale.  Closure of the location resulted in a net

savings to the Debtor of approximately $4,000.00 in which had been required to cover

Tullahoma issues.

At the end of July 2018, -State Petroleum, the company Heath Oil had divested its

petroleum assets to in 2014, discontinued suppling all petroleum supply to the Winchester bulk

plant that they leased from Heath Oil and ceased all business operations and contact without

notice.  This closed the small commercial fueling center and ended Heath's ability to supply

heritage petroleum customers under the original agreement with Tri-State.  As noted, Tri-State

provided no notice.  Tri-State remains obligated on the rent agreement till the end of 2019, which

is $16,500.00.  They are also failing to meet the terms of shared profit per our sales contract.

Unless resolution of this breach can be reached shortly, suit will be filed.

17

Our son, who was a key member of our management team, decided to pursue a different career and left us in the fourth quarter of 2018. We are sharing his previous responsibilities among existing management.

After the filing of the Chapter 11 our franchise tir supplier, Tire Pros, canceled our agreement and we began the process of formulating new supplier relationships and programs. While an almost devastating blow at a very vulnerable point we now have three new suppliers and multiple new tire programs. Tire manufacturers program participation can amount to significant rebates and "back-end"money over the course of a year. Tire Pros cancellation had a very negative impact on those resources and additional income. We continue to be the dominant tire dealer in our market as evidenced by being voted Franklin County's Finest Tire Dealer for the 12th year in a row.

6.4    **Direct Economic Benefits Since Filing.**  For the last five months (October through February) gross sales are up 9% over the same period the previous year; $652,558.00 in 2019 versus $598,556.00 in 2018. Gross profits (the ability to pay bills) are up 16.3%, $268,680.00 in 2019 versus $231,031.00 in 2018. That is an average of $7,400.00 per month increase in gross profit.

Operational costs have been reduced and primary savings incurred with the following:

a.) Bank overdraft charges and late fees were running $3,000.00 per month prior to filing. These have stopped.

b.) Closing the Tullahoma store stopped $4,000.00 per month in loss.

c.) Tire Pros franchise fees and marketing fees were over $1,000.00 per month.

d.) $2,500.00 repayment monthly of a personal loan to the owners was discontinued. This money was used personally to pay the owners home mortgage payment. Citizen Tri-County Bank hold a substantial second mortgage on the residence. Peggy Heath's salary was increased to $1,700.00 per month to offset this personal income loss needed to make future mortgage payments. The result is an $800.00 per month saving.

18

e.) Operational costs are down approximately $2,000.00 per month compared to last year. These savings are from lower utility bills, vehicle expenses, insurance costs, etc.

6.5 **Non-reoccurring Expenses.** Heath Oil has experienced several non-reoccurring expenses since filing.

a.) Demolition and removal of closed convenience store $4,000.00.

b.) New office phone system $3,400.00.

c.) Replacement office computer equipment $2,200.00.

d.) Bulk oil storage system for the shop $1,400.00.

e.) Removal of Tire Pros signage $1,000.00.

f.) Replacement and repair of shop overhead door $1,800.00.

6.6 **Management of the Reorganized Debtors.** The Reorganized Debtor will be Heath Oil Company, Inc., managed by Steven and Peggy Heath.

## ARTICLE 7

## TREATMENT OF UNCLASSIFIED CLAIMS

Pursuant to § 1123(a)(1) of the Bankruptcy Code, the Plan does not Classify Administrative Claims or Allowed Priority Tax Claims, if any. Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 7 in full settlement, release and discharge thereof.

7.1 **Administrative Bar Date.** Except as otherwise provided herein, Proofs of Administrative Claim must be filed no later than the Administrative Bar Date. Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date, shall be forever barred from asserting such claims against the funds of the Reorganized Debtor.

7.2 **Professionals' Compensation and Reimbursement.**

(a) All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to § 330 of the Bankruptcy

19

Code no later than the Administrative Bar Date.  Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, the Debtor, their counsel, and the office of the United States Trustee, no later than the date fixed by Order of the Court or in notices provided in the application.  Any such objection not timely filed and served shall be deemed to have been waived.

(b)    No later than three (3) days prior to the Effective Date, each Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to § 330 of the Bankruptcy Code; provided, however, that the failure of a Professional to provide such an estimate to the Debtor shall not relieve the Debtor of the obligation with respect to any allowed compensation and expense reimbursement.  Such estimates may include estimated sums for the preparation and prosecution of any such application.

7.3    **Ordinary Course Liabilities.**  Holders of Administrative Claims for liabilities incurred in the ordinary course of the Debtor's business (other than claims of governmental units for taxes or interest or penalties related to such taxes) shall not be required to file any Proofs of Administrative Claims and such Administrative Claims shall be assumed and paid pursuant to the terms and conditions of the transaction giving rise to such Administrative Claim without any further action by the holders of such claims.

7.4    **Administrative Claims.**  Each Administrative Claim, to the extent not previously paid, shall be paid by the Debtor in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, (ii) thirty (30) days after the entry of a Final Order allowing such Administrative Claim or (iii) as may be otherwise mutually agreed in writing between the Debtor and the holder of such Claim.

7.5    **Priority Tax Claims.**  Except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Allowed Claims of Governmental Units

entitled to priority pursuant to § 507(a)(8) of the Bankruptcy Code, shall be paid pursuant to 11 U.S.C. § 1129(a)(9)(C).

      7.6    **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under § 1930 of title 28 of the United States Code shall be paid in Cash in full on or before the Effective Date. All fees and charges which may accrue between the Effective Date and the entry of a Final Decree in the case shall be paid in cash as they become due.

      7.7    **Summary of Unclassified Claims in the Case.**

      a.    <u>Professionals</u>:  (1) The Court has approved the employment of Paul E. Jennings as attorney for the Debtor.   Debtor  paid an initial retainer of, <u>$5,051.00</u>.  Fees and expenses through January 23, 2019, total approximately $17,496.48.  Additional fees and expenses have been incurred for the preparation of this Plan.  Continuing fees will accrue for confirmation of this Plan.

      2.    As previously noted all fees of professionals are subject to final approval by the Bankruptcy Court following application, notice and opportunity to object to any fees and expenses.

      b.    <u>Ordinary Course Liabilities</u>:  Debtors may have small unpaid ordinary course liabilities which have been incurred during the operations under the Chapter 11.  These will be paid according to the ordinary course terms between the parties.

      c.    <u>Post-Petition Tax Liability</u>: Debtor believes it is current with post-petition liability to Internal Revenue Service ("IRS") for 941 tax.  The amount of the claim, if any, will be resolved and shall be paid in full 60 days from the Effective Date of the Plan, or upon entry of a final Order resolving any objection to the claim which may be filed.

      d.    <u>United States Trustee Fees</u>: All fees to the United States Trustee will be paid as they become due until the closing of the case.  It is estimated the closing of the case will be in the Fourth Quarter of 2019.

e.    <u>Wages and Rent Claims</u>: Debtors are unaware of any wage claims filed in the case, either for pre-petition wages or for post petition wages.  Debtors are unaware of pre-petition rents due.

**ARTICLE 8**

**CLASSIFICATION OF CLAIMS AND INTERESTS**

Except as otherwise provided in Article 8, Allowed Claims and Allowed Interest are Classified as set forth in this Article 8.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

8.1    **Class 1 - Allowed Priority Claims.**  Class 1 consists of all Allowed Priority Claims, which shall include the claims of Franklin County; Coffee County; City of Winchester; City of Tullahoma; the Internal Revenue Service; and the State of Tennessee.

a.)    Randy Kelly, the Franklin County Trustee:   No claim has been filed by the Franklin County Trustee.  Debtor believes outstanding claims for real and personal property taxes have been paid.  Debtor believes post-petition taxes have been paid.  Debtor will confirm the status with the claimant.  These amounts will be obtained and added by appropriate amendment to this document.

b.)    John H. Marchesoni, the Coffee County Trustee:  No claim has been filed by the Coffee County Trustee.  Debtor is advised of previous contact by the Coffee County tax attorney.  These taxes are traceable to the now closed Tullahoma Tire location.  These amounts will be obtained and added by appropriate amendment to this document.

c.)    Beth Rhoton, Tax Collector, for the City of Winchester: Filed a claim in the amount of $4,323.11.  Debtor will provide information from that Office updating the claim as of February 28, 2019.

d.)    Rosemary Golden, Tax Collector for the City of Tullahoma: Filed no claim for taxes due to the City of Tullahoma.  Debtor believes no taxes are outstanding.  However, Debtor will obtain the status of any claims.  If owed, these taxes are related to the Tullahoma location, now closed.

e.)    The Internal Revenue Service ("IRS"): The IRS has filed a claim in the amount of $400.00.  The Debtor believes there are no additional amounts due to the IRS.

f.)    State of Tennessee: The Tennessee Department of Revenue has filed a priority claim for $66,820.59.

8.2    **Class 2 - Allowed Secured Tax Claims.**  Class 2 consists of Allowed Secured Tax Claims.  Debtor is unaware of any claims in this class, however, if owed the taxes related to real and personal are secured by the statutory lien of the taxes authorities..

8.3    **Class 3 - Citizen Tri-County Bank.**  Class 3 is the filed claim of Citizens Tri-County Bank, in the amount of $714,040.24.  (Claims Register 2)  This is based upon a a perfected security interest in real property and buildings at 501 1st Avenue S. W., Winchester, TN; a blanket security interest in personal property of the Debtor; and a second mortgage on the owners residence at 229 Trotters Circle, Estill Springs, TN.

8.4    **Class 4 - Citizens Tri-County Bank.**  Class 4 is the filed secured claim of Citizens Tri-County Bank.  (Claims Register 3)  Citizens Tri-County Bank has filed a claim  in the amount of $674,802.32 secured by real and personal property as provided in Class 8.3 together with property listed on the filed claims in the individual case of Steven M. And Peggy B. Heath, Case No. 418-12322-SDR.

8.5    **Class 5 - Citizens Tri-County Bank.**  Class 5 is the unsecured claim of Citizens Tri-County Bank in the amount of $11,640.07.  (Claims Register 4)

8.6    **Class 6 - Lease Corporation of America ("LCA").**  Class 6 is the secured claim of LCA.  (Claim Register 13)  LCA has filed a claim in the amount of $23,149.76 secured by specifically described  equipment.

23

8.7    **Class 7 - Lease Corporation of America ("LCA").**    Class 7 is the secured claim of LCA.  (Claim Register 14)  LCA has filed a claim in the amount of $43,626.42 secured by specifically described equipment.

8.8    **Class 8 - Lease Corporation of America ("LCA").**    Class 8 is the lease claim of LCA.  (Claim Register 15)  By agreed order the property has been surrendered to the Claimant.

8.9    **Class 9 - Tennessee Department of Env't and Conservation ("TDEC").**    Class 9 is the secured claim of TDEC and has been scheduled in the amount of $25,000.00 on a judgment lien.

8.10    **Class 10 - Unsecured Creditors.**    Class 10 are the claims of Unsecured Creditors with deficiency claims, creditors with judgment liens avoided under Section 506, and trade creditors.  Unsecured trade creditors total 12 claimants with claims totaling $236,141.35.  The Class 1 claim of the Tennessee Department of Revenue has an unsecured claim of $11,846.49.  The Class 4 creditor has a deficiency claim of approximately $581,638.55.  The Class ___ creditor has a deficiency claim of $_____.  The Class 9 judgment lien creditor has a claim total of $25,000.00.

Not included herein is the unsecured claim of Tri-State Petroleum, LLC in the estimated, disputed amount of $100,000.00.  Debtor will assert in a separate adversary proceeding that Tri-State Petroleum owes the Debtor in excess of $150,000.00.

Also, not included are claims totaling $175,555.60 for loans made to the Debtor by the owners Steven M. Heath and Peggy B. Heath.

8.11    **Class 11 - Owners.**    Class 11 shall be the ownership interest of Steven M. Heath and Peggy B. Heath.

**ARTICLE 9**

**<u>IMPAIRMENT OF CLASSES</u>**

All classes of claims are impaired as a result of this Plan.

## ARTICLE 10

## TREATMENT OF CLAIMS AND INTERESTS

The claims in each of the classes shall receive the following treatment under the Plan in full settlement, release and discharge thereof.

Each claimant provided for herein and identified as holding a security interest in identified collateral shall retain its security interest in that collateral until the debt established in the Plan is paid in full. No further nor additional filings shall be required to perfect the security interest.

10.1    **Class 1 - Allowed Priority Claims.**

a)    Franklin County Trustee.    Debtor believes there are no monies due to the claimant, Franklin County Trustee.

b.)    Coffee County Trustee.    Any funds due to the Coffee County Trustee are the result of property taxes due on the property in Tullahoma, TN located at North Jackson Street. This property will be sold and taxes paid at the sale closing.

c.)    The City of Winchester has filed a claim in the amount of $4,323.11. Debtor shall pay this claim, plus interest at ten percent (10%), in the amount of $500.00 quarterly until the claim is paid in full.

d.)    City of Tullahoma.    Debtor believes there are no funds payable to the City of Tullahoma.

e.)     The Internal Revenue Service has filed a claim for unpaid taxes in the amount of $400.00. Debtor shall pay the Claim in full within sixty (60) days of the Effective Date of the Plan.

f.)    The State of Tennessee Department of Revenue shall be paid $66,820.59, plus six percent (6%) interest, over the term of five years in equal monthly payments of $1,292.00, commencing sixty (60) days from the Effective Date of the Plan**.**

10.2   **Class 2 - Allowed Secured Tax Claims.**   There are no claims in this class as the payment of real property taxes are provided for in Class 1, pursuant to the claims filed by those entities.

10.3   **Class 3 - Citizens Tri-County Bank ("Bank").**   The Class 3, Class 4 and Class 5 treatment of Claims of Citizens Tri-County Bank in Heath Oil Company, Inc., ("Business") Case No. 418-12323-SDR and in Steven M. Heath and Peggy B. Heath, ("Personal") Case No. 418-12322-SDR are as follows:

BUSINESS:

| | |
|---|---|
| Class 8.3 | $714,040.24 |
| Class 8.4 | $674,802.32 |
| Class 8.5 | $11,640.07 |

PERSONAL:

| | |
|---|---|
| Class 8.4 | $48,142.59 |
| Class 8.5 | $674,802.32 |
| Class 8.6 | $311,705.48 |

Reference to all of the claims and security documents will demonstrate that the above referenced loans are cross-collateralized and involve substantially all of the business property and all of the property of the individuals as guarantors of the business debt. Accordingly, the Bank debt will be treated identically in the two cases.

Th major business debt as provided for in Class 8.3 in the amount of $714,040.24 is secured by the real estate of Heath Oil Company, Inc. at 501 1st Avenue S. W., Winchester, TN, together with the inventory, accounts receivable, and equipment of the business. The debt is also secured by a second mortgage on the personal residence of the individuals. Considering interest accrual since filing and the current value of the collateral, Debtor believes the debt to be approximately $740,000.00.

Debtor proposes to pay the loan over the term of twenty (20) years, six percent (6%) interest, or a monthly payment of $5,301.59.

The Class 8.6 claim in the Personal case is in the amount of $311,705.48 and is secured by the real estate located on North Jackson Street in Tullahoma, TN, conservatively valued at $285,000.00. Additionally, the note is secured by equipment valued at $10,000.00; a boat, motor, and trailer valued at $30,000.00; a vacant two acres lot belonging to Peggy B. Heath valued at $25,000.00; and a $250,000.00 Life insurance policy on Steven M. Heath. This same collateral has been utilized to secure the claim treated a Class 8.4 in the Personal case in the amount of $48,142.59. These two claims total $359,848.07. Collateral is $350,000.00, not considering the life insurance policy.

Debtor proposes that the commercial lot and equipment be sold on or before August 1, 2019, and if not sold the property be sold at auction.

Additionally, Debtor proposes to execute a note in the amount of $65,000.00 secured by the remainder of the collateral. This note would be based upon ten years term, eight percent interest (8%), but with a one years call. Payments for the year would be $788.63 monthly. Debtor believes this would provide ample time to liquidate the boat and lot.

Class 8.4 in the Business case and Class 8.5 in the Personal case are in the identical amount of $674,802.32. These Claims are filed as secured claims listing the collateral outlined in Class 8.3 of the Business case and Class 8.6 of the Personal case. It is the Debtor's understanding that the amount of the Class 8.4 of the Business case and Class 8.5 of the Personal case was placed in a deferred payment status. As the accompanying analysis demonstrates, pursuant to 11 U.S.C. § 506, this claim represents the under secure portion of the Bank's debt.

Additionally, Class 8.5 represents the Bank's claim of $11.640.07 which is filed as unsecured.

     10.4   **Class 4 - Citizens Tri-County Bank.** See above.

     10.5   **Class 5 - Citizens Tri-County Bank.** See above.

     10.6   **Class 6 - Lease Corporation of America ("LCA").** The Claims of Leased Corporation of America are listed as Classes 8.6, 8.7 and 8.8. Pursuant to the Agreed Order

entered December 21, 2018, (Docket No. 59), the Class 6 and 7 claims valued at $27,500.00, payable over the term of thirty-six (36) months, plus seven percent (7%) interest, or in the monthly amount of $849.12. The remaining claim balance is unsecured.

The Class 8 claim is treated as a Lease. The property has been surrendered and LCA is in the process of selling that property.

10.7 **Class 7 - Lease Corporation of America.** See above.

10.8 **Class 8 - Lease Corporation of America.** See above.

10.9 **Class 9 - TN Department of Env't and Conservation ("TDEC").** The class 9 claimant has filed a secured claim in the amount of $25,000.00. The judgment lien has attached to the property located at 501 1st Avenue S. W., Winchester, TN. The value of the property does not equal the claim of the secured creditor, Citizens Tri-County Bank. Accordingly, the lien should be avoided pursuant to 11 U.S.C. § 506.

10.10 **Class 10** - **Unsecured Creditors.** The Class 10 claimants shall receive a lump sum payment of $2,500.00 per year. It is provided however that additionally, these Claimants shall receive any funds dedicated to any Class upon the satisfaction of payments to priority or secured creditors within a period of five years. Distributions shall be made quarterly and shall be pro rata as defined in Section 2.49.

10.11 **Class 11 - Owner.** Steven M. Heath and Peggy B. Heath shall retain their ownership interest, its provided however that these individuals shall receive no payments on the loans advanced by them.

## ARTICLE 11

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

11.1 **Assumption and Assignment of other Executory Contracts and Unexpired Leases.**

Debtor has no executory contracts or unexpired leases. On the Effective Date any executory contracts and unexpired leases to which the Debtors are a party, shall be deemed rejected in accordance with § 365 of the Bankruptcy Code.

# ARTICLE 12

## IMPLEMENTATION OF THE PLAN

12.1    **Implementation.**  The Debtor shall take all necessary steps and perform all necessary acts to consummate the terms and conditions of the Plan.  The Confirmation Order shall contain appropriate provisions, consistent with § 1142 of the Bankruptcy Code, directing the Debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required by the Plan and to perform any act that is necessary for the consummation of the Plan.

12.2    **Revesting of Assets.**  All of the assets and properties of the Estate shall vest in the Reorganized Debtor upon the Effective Date of the Plan.

12.3    **Funding.**  The funding of the Plan shall be from earnings of the Debtor.

12.4    **Management of the Debtor.**  Management shall be by Steven and Peggy Heath.

12.5    **Transfer Taxes.**  Pursuant to § 1146 of the Bankruptcy Code, the initial issuance, transfer, or exchange of any security and the making or deliver of any instrument of transfer in connection with or in furtherance of the Plan shall not be subject to tax under any law imposing a stamp tax, transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by § 1146, if any, shall not be subject to any state, local or federal law imposing sales tax.

12.6    **Execution of Documents.**  Pursuant to §§ 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor shall be authorized to execute, in the name of any necessary party, any Lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of the Plan not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

12.7    **Filing of Documents.**  Pursuant to §§ 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be

29

directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

12.8    **Preservation of Rights of Action.**  Except as otherwise provided herein, the Debtor retains the right to enforce and may enforce any claims, rights and causes of action (i) arising under §§544 through 550 of the Bankruptcy Code or (ii) belonging to the Debtor or the Estate as of the Petition Date and arising under any provision of state or federal law, or any theory of statutory or common law or equity.  Any recovery received by the Debtor through the prosecution, settlement or collection of any such claim, right or cause of action, shall be distributed by the Debtor pursuant to the terms of the Bankruptcy Code.

12.9    **Challenge of Claim.**  Notwithstanding any provision of the Plan to the contrary, the Debtor expressly reserves the right to challenge the existence, validity, allowance, or amount of any Claim.

12.10    **Sale of Assets.**  Debtor shall have the authority to sell or encumber any of the assets of the Debtor, subject only to the rights and agreement of creditors having an interest in the assets, such agreement shall not be unreasonably withheld.

# ARTICLE 13

## PROVISIONS GOVERNING DISTRIBUTIONS

13.1    **Disbursing Agent.**  The Disbursing Agent shall distribute all Cash or other Property to be distributed under the Plan.  The Disbursing Agent shall serve without bond.  The Disbursing Agent may liquidate any non-cash assets it receives.

13.2   **How Made.**   In general, any payments, distributions or other performance to be made pursuant to the Plan on account of any Allowed Claim or Allowed Interest shall be deemed to be timely made if made on or within ten (10) Business Days following the later of (i) the Effective Date or (ii) the expiration of any applicable objection deadline with respect to such Claim or Interest, (iii) ten (10) days following entry of a Final Order allowing said claim or (iv) such other times as provided in the Plan.   All cash payments to be made by the Debtor pursuant to the Plan shall be made by check drawn on a domestic bank.   The Debtor shall be the Disbursing Agent to make distributions under the Plan.

Distributions shall be made: (1) at the addresses set forth on the Proofs of Claim or Proofs of Interest filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.   If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.   The Debtor shall not be required to attempt to locate any holder of an Allowed Claim or an Allowed interest.

13.3   **Unclaimed Distribution.**   Any cash or other property to be distributed under the Plan shall become the property of the Debtor if it is not claimed by the Person entitled thereto before the later of (i) one (1) year after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Person becomes a Final Order.

13.4   **Distribution with Respect to Disputed Claims.**   During the pendency of any objection to any Claim or Interest, no distribution under the Plan will be made to the holder of such Claim or interest.

13.5   **Compliance with Tax Requirements.**   In connection with the Plan, the Debtor shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholdings and reporting requirements.

## ARTICLE 14

## DISPUTED CLAIMS AND INTERESTS

14.1    **General.**  The Plan contains a mechanism for resolving disputes concerning the amount of certain Claims or Interests asserted against the Debtor by any person.

The Debtor reserves the right to object to any Proof of Claim or Proof of Interest filed in any amount including those filed, with a priority, greater than that set forth in the Schedules, representing any Claim or Interest not identified in the Schedules, or representing any Claim or Interest identified in the Schedules as contingent, unliquidated or disputed.  The Debtor expressly reserves the right to amend the Schedules from time to time as necessary to ensure that the Schedules accord with the Debtor's books and records.

14.2    **Time to Object.**  Unless otherwise ordered by the Bankruptcy Court, objections to the allowance of any Claim or Interest may be filed only by the Debtor no later than the later to occur of (i) 180 days after the Effective Date or (ii) 180 days after the date proof of such Claim or Interest is filed.  Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules is or has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

## ARTICLE 15

## DISCHARGE AND RELEASES

15.1    **Discharge.**  Pursuant to 11 U.S.C. § 1141, the Debtor will  receive a discharge in the case as is provided in 11 U.S.C. § 1141.

# ARTICLE 16

## MISCELLANEOUS PROVISIONS

16.1   **Orders in Aid of Consummation.**  Pursuant to §§ 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

16.2   **Compliance with Tax Requirements.**  In connection with the Plan, the Debtor and, where applicable the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan shall be subject to such withholding and reporting requirements; provided, however, that the transfer of any Cash, Property or other Interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under § 1146 of the Bankruptcy Code.

16.3   **Due Authorization by Creditors.**  Each and every Creditor who elects to participate in the distributions provide for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distribution provided for in the Plan and that there are no outstanding Liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

16.4   **Amendments.**  The Plan may be altered, amended or modified by the Debtor, in writing, signed by the Debtor, at any time before the substantial consummation of the Plan, as provided in §§ 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

16.5   **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan if revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor, or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor.

16.6    **Request for Relief Under § 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor will request Confirmation under § 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to § 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

16.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

16.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

16.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

16.10    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

16.11    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if the Debtor at (i) 501 1st Avenue S. W., Winchester, TN;  with a copy to Paul E. Jennings, 805 South Church Street, Suite 3, Murfreesboro, Tennessee 37130;

(b)    if to any other Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests filed by such holder; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim; or (iii) the address reflected in the Debtor's Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

16.12  **Governing Law.**  Except to the extent that the Bankruptcy Code, Bankruptcy Rules or other Federal law is applicable, the rights and obligations arising pursuant to and under the Plan shall be governed by, and construed and enforced in accordance with the laws of the State of Tennessee without giving effect to the principles of conflicts of law thereof.

## ARTICLE 17

## RETENTION OF JURISDICTION

17.1  **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order, the occurrence of the Effective Date, or entry of a Final Decree, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)  Ensure that the purpose and intent of this Plan are carried out;

(b)  Consider any modification of this Plan under § 1127 of the Code and/or modification of this Plan after substantial consummation, as defined in § 1101(2) of the Bankruptcy Code.

(c)  Allow, disallow, determine, estimate, liquidate, Classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expenses and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(d)  Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(e)  Resolve any motions pending on the Effective Date to assume, assume and assign or reject any executory contract or unexpired lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(f)  Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(g)    Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(h)    Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case, including, but not limited to any Order necessary to enforce the provisions of the Plan;

(i)    Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(j)    Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Rules;

(k)    Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any person with consummation or enforcement of the Plan;

(l)    Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

(m)    Determine any dispute arising under or related to the Plan, including any issues of joint liability;

(n)    Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement; and

(o)    Enter an Order or Final Decree concluding and closing the Case.

36

# ARTICLE 18

## VOTING TO ACCEPT OR REJECT DEBTOR'S PLAN

18.1 **Voting Instructions.** A Creditor or Interest Holder who is entitled to vote may accept or reject the Plan by executing and returning to the Balloting Agent (as defined below) the ballot (a "Ballot") that was sent out with this Disclosure Statement. The following instructions govern the time and manner for filing Ballots accepting or rejecting the Plan, withdrawing or revoking a previously filed acceptance or rejection, who may file a Ballot, and procedures for determining the validity or invalidity of a Ballot received by the Balloting Agent.

18.2 **Deadline for Receipt of Ballots.** The solicitation period for votes accepting or rejecting the Plan will expire as set forth in the order which will be sent to all creditors (the "Voting Deadline"). A Ballot accepting or rejecting the Plan must be received no later than the date and time or it will not be counted in connection with the Confirmation of the Plan or any modification thereof.

18.3 **Balloting Agent.** All votes to accept or reject the Plan must be cast by using the Ballot. Executed Ballots should be returned by the Voting Deadline, to:

> Paul E. Jennings
> Paul E. Jennings Law Offices, P.C.
> 805 South Church Street, Suite 3
> Murfreesboro, TN 37130
> Phone: (615) 895-7200
> Facsimile: (615) 895-7294
> E-mail: paulejennings@bellsouth.net

(the "Balloting Agent"). A Creditor or Interest Holder entitled to vote who has not received a Ballot, or whose Ballot has been lost, stolen or destroyed, may contact the Balloting Agent at the address indicating above to receive a replacement Ballot.

18.4 **Who May Vote - In General.** Only those claimants whose claims are impaired may vote. Only those holders of impaired claims are being solicited and are entitled to vote to accept or reject the Plan.

18.5    **Ballots Executed in a Representative or Fiduciary Capacity.**  Ballots executed by trustee, executors, administrators, guardians, attorneys-in-fact, officers or corporations or other acting in a fiduciary or representative capacity, must indicate the capacity in which such person executed the Ballot and, unless otherwise determined by the Debtor, must submit proper evidence satisfactory to the Debtor of its authority to so act.

18.6    **Voting Multiple Claims and Interests.**  A single form of ballot is provided for each Class of Claims or Interests.  Any Person who holds Claims or Interests in more than one Class is required to vote separately with respect to each Class in which such Person holds Claims or Interests.  However, any Person who holds more than one Claim or Interest in one particular Class will be deemed to hold only a single Claim or Interest in such Class in the aggregate amount of all Allowed Claims or Allowed Interest in such Class held by such Person.  Thus each Person need complete only one ballot for each Class.

18.7    **Objections to Ballots.**  An objection to a Ballot may be filed by the Debtor or any party in interest.  No Ballot case with respect to any Claim or Interest which is the subject of a pending objection will be counted for purposes of determining whether the Plan has been accepted or rejected, unless the Bankruptcy Court orders otherwise.

18.8    **Defects or Irregularities.**  Any executed and timely filed Ballot which does not indicate either acceptance or rejection of the Plan shall be deemed to be a defective or irregular Ballot.

Any defects or irregularities in connection with deliveries of Ballots must be cured prior to the deadline for filing timely Ballots.  Neither the Debtor nor any other person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots, nor will any of them incur any liability for failure to provide such notification.  All questions as to the validity, form, eligibility (including the time of receipt) acceptance and revocation or withdrawal of Ballots will be determined by the Bankruptcy Court, upon motion and upon such notice and hearing as is appropriate under the circumstances.  Unless otherwise directed by the

Bankruptcy Court, delivery of Ballots will not be deemed to have been made until such irregularities have been cured or waived.  Ballots as to which any irregularities have not been cured or waived will not be counted toward the acceptance or rejection of the Plan.

Where more than one timely and properly completed Ballot is received, the Ballot which bears the latest date will be counted.

18.9    **Revocation of Previously Filed Acceptance or Rejections.**  Any Creditor or holder of an Equity Interest who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to the Balloting Agent at any time prior to the Voting Deadline.

A notice of withdrawal, to be valid, must (i) describe the Claim or Equity Interest, as the case may be, if appropriate, represented by such Equity Interest or Claim, (ii) be signed by the Creditor or Interest Holder, as the case may be, in the same manner as the Ballot was signed and (iii) be received by the Balloting Agent on or before the Voting Deadline.  The Debtor reserves the absolute right to contest the validity of any such withdrawals of Ballots.

## ARTICLE 19

## CONFIRMATION

19.1    **Confirmation Hearing.**  The Bankruptcy Code requires that the Bankruptcy Court, after notice, hold a hearing to consider confirmation of the Plan.  The Confirmation Hearing will be set by the Order of the Bankruptcy Court in U.S. Post Office and Courthouse, 2nd Floor Courtroom, 200 South Jefferson Street, Winchester, TN 37398.  The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except for an announcement made at the Confirmation Hearing.

19.2    **Requirements for Confirmation.**  At the Confirmation Hearing, the Bankruptcy Court will determine whether the requirements of § 1129 of the Bankruptcy Code have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan.  The requirements of § 1129 include determinations by the Bankruptcy Court that: (i) the Plan has

classified Claims and Interests in a permissible manner, (ii) the contents of the Plan comply with various technical requirement of the Bankruptcy Code, (iii) the Debtor has proposed the Plan in good faith, (iv) the Debtor has made disclosures concerning the Plan that are adequate and include information concerning all payments made or promised in connection with the Plan and the Case, (v) the Plan is in the "best interest" of all Creditors and Interest Holders, (vi) the Plan is feasible, and (vii) the Plan has been accepted by the requisite number and amount of Creditors or Interest Holders in each Class entitled to vote on the Plan, or that the Plan may be confirmed without such acceptances.  The Debtor believes that all of these conditions have been or will be met prior to the Confirmation Hearing.

19.3  **Best Interest Test.**  The so-called "best interest" test requires that each impaired Creditor and impaired Interest Holder either (a) accept the Plan or (b) receive or retain under the Plan property of a value, as of the Effective Date of the Plan that is not less than the value such entity would receive or retain if the assets of the estate were to be liquidated under Chapter 7 of the Bankruptcy Code.

To determine what the holders in each Impaired Class of Claims or Interests would receive if the Debtor's assets were liquidated under Chapter 7, the Bankruptcy Court must determine the dollar amount that would be generated from the liquidation of the Debtors' assets and properties in a Chapter 7 liquidation case.  The amount that would be available for satisfaction of Allowed Claims against and Allowed Interests in the Debtor would consist of the proceeds resulting from the disposition of the Debtor's assets, augmented by the cash held by the Debtors at the commencement of the Chapter 7 case.  Such amount would be reduced by the amount of any Claim or Claims secured by the Debtor's assets, the costs and expenses of the liquidation, and such additional Administrative Claims and Priority Claims that may result from the termination of the Debtor's business.    The costs of liquidation under Chapter 7 would become an Administrative Claim with the highest priority against the proceeds of liquidation. Such costs would include the fees payable to a Chapter 7 trustee, as well as those which might be

payable to attorneys, financial advisors, appraisers, accountants and other professionals that such a trustee may engage to assist in the liquidation.  In addition, Chapter 7 costs would include any liabilities incurred or assumed pursuant to the transactions necessary to effectuate the liquidation. Moreover, claims entitled to administrative priority may arise by reason of an breach or rejection of any executory contracts entered into by the Debtor during the pendency of the Case in Chapter 11.

After satisfying Administrative Claims arising in the course of the Chapter 7 liquidation, the proceeds of the liquidation would then be payable to satisfy any unpaid expenses incurred during the time this case was pending under Chapter 11, including compensation for attorneys, financial advisors, appraisers, accountants and other professionals retained by the Debtor or any official committee appointed pursuant to § 1102 of the Bankruptcy Code.

A detailed liquidation analysis of Debtor's assets is provided in a following Article of this Disclosure Statement.

19.4  **Feasibility.**  For the Plan to be confirmed, it must be demonstrated that consummation of the Plan will not likely be followed by the liquidation or the need for further financial reorganization of the Debtor.  For purposes of determining whether the Plan meets this requirement, the Debtor has analyzed its ability to meet the obligations under the Plan.  See Exhibit attached hereto.

The Projections of the Debtor's financial performance assumes the transactions contemplated by the Plan are consummated.  Based on the review of such Projections, the Debtors believe that it will be able to make all payments required to be made pursuant to the Plan and it is not likely to require any further financial rehabilitation.

19.5  **Confirmation With the Acceptance of Each Impaired Class.**  The Plan may be Confirmed if each impaired Class of Claims or Interests accepts the Plan.  Classes of Claims or Interests which are not impaired are deemed to have accepted the Plan.  A Class is impaired if the

41

legal, equitable or contractual rights attaching to the Claims or Interests of that Class are modified other than by curing defaults and reinstating maturities or by payment in full in cash.

The Bankruptcy Code defines acceptance of a plan by a Class of Claims as acceptance by the holders of two-thirds (2/3) in dollar amount and a majority in number of Claims of that Class. Only those Claims, the holders of which actually vote to accept or reject the Plan are counted for the purpose of determining whether the requisite number and amount of acceptances have been received.

19.6 **Confirmation Without the Acceptance of Each Impaired Class.** In the event that any impaired Class or Claims or Interest does not accept the Plan, the Bankruptcy Court may nevertheless confirm the Plan at the Debtor's' request if (i) all other requirements of § 1129(a) of the Bankruptcy Code are satisfied, (ii) at least one impaired Class of Claims votes to accept the Plan without regard to any vote cast on account of a Claim held by "insiders" (as defined in the Bankruptcy Code) and (iii) as to each impaired Class which has not accepted the Plan, the Bankruptcy Court determines that the Plan "does not discriminate unfairly" and is "fair and equitable" with respect to such non-accepting Class. Pursuant to the provisions of the Plan, if necessary, the Debtors have requested the Court confirm the Plan over the rejection of any non-accepting class in the event all other elements of § 1129(a) are satisfied.

19.7 **Unfair Discrimination.** A plan "does not discriminate unfairly" if the legal rights of a non-accepting class are treated in a manner that is consistent with the treatment of other classes whose legal rights are intertwined with those of the non-accepting class, and no class received payments in excess of that which it is legally entitled to receive from its Claims or Interests. The Debtor believes that under the Plan all classes of Impaired Claims and Impaired Interests are treated in a manner that is consistent with the treatment of other classes of Claims and Interests with their legal rights are intertwined, if any, and no class of Claims or Interests will receive payments or property with an aggregate value greater than the aggregate value of the

Allowed Claims and Allowed Interests in such class.  Accordingly, the Debtor believes the Plan does not discriminate unfairly as to any impaired class of Claims or Interests.

19.8  **Fair and Equitable.**  Whether the Plan is fair and equitable depends upon the application of the so-called "absolute priority rule".  Subject to certain exceptions, this rule, codified in § 1129(b)(2) of the Bankruptcy Code, generally requires that an impaired Class of Claims or Interests that has not accepted the plan must be paid in full if a more junior class receives any distribution under the plan.

With respect to Secured Claims, the absolute priority rule allows the confirmation of a plan over the rejection of a class of Secured Claims if the holders of such Claims retain their liens and each holder of a Claim of such class receives on account of such Claim deferred cash payments, totaling at least the allowed amount of such Claim, of a value, as of the effective date of the plan, of at least the value of such holder's interest in the property securing its Claim.  With respect to such Claims, the Plan provides that the holders thereof shall retain their liens and shall receive on account of such Claim cash or deferred cash payments, totaling at least the allowed amount of such Claims, of a value, as of the Effective Date, of at least the value of such holders' interest in the Mortgaged Property.

With respect to Unsecured Claims, the "absolute priority rule" provides that a plan may be confirmed over the rejection by an impaired class of Unsecured Claims if each holder of a Claim of such class receives on account of such Claim property of a value, as of the effective date of the plan, equal to the allowed amount of such claim, or that the holder of a claim or interest that is junior will not receive or retain under the plan on account of such junior claim any property.  The Plan provides all classes of unsecured creditor are not  receiving  100% of their claims.   The Rule may be applicable in the case.

19.9  **Effect of Confirmation.**   On the Effective Date, the Debtor will be discharged from all Claims and Interests which existed prior to confirmation of the Plan, except for payments and distributions provided for in the Plan or in the order of the Bankruptcy Court

43

confirming the Plan.  The Debtor's discharge will be fully effective against all Creditors and

Interest holders, regardless of whether they have voted to accept or reject the Plan and regardless

of whether the Plan is confirmed by consent or by resort to the provisions of § 1129(b) of the

Bankruptcy Code.

On the Effective Date the Debtor will be discharged pursuant to § 1141 of the Bankruptcy

Code from all Claims against and Interests in the Debtors that arose prior to the Effective Date

and from any liability of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code

whether (i) a Proof of Claim or Proof of Interest has been filed or deemed to have been filed with

respect to such Claim or Interest, (ii) such Claim or Interest is allowed or disallowed, or (iii) the

holder of such Claim or Interest has accepted the Plan.  All Persons will be precluded and

enjoined from asserting against the Debtor and their successor, assets or properties, or against

any property that is distributed, or is to be distributed under the Plan, any other or further Claim

or Interest based upon any acts or omission, transaction or other activity of any kind or nature

that occurred prior to the Effective Date.  The entry of the Confirmation Order shall forever stay,

restrain and permanently enjoin (i) the commencement or continuation of any action, the

employment of process, or any act to collect, enforce, attach, recover or offset from the Debtors,

or from property of the Debtor, (ii) the creation, perfection or enforcement of any lien or

encumbrance against any property of the Debtor or any property distributed under the Plan, or

(iii) any Claim or Interest discharged under the Confirmation Order, the Plan or pursuant to §

1141(d)(1) of the Bankruptcy Code, except as otherwise provided in the Plan, or in the

Confirmation Order, or with respect to the Debtor's obligations under the Plan or Confirmation

Order.

19.10  **Solicitation.**  Section 1125(e) of the Bankruptcy Code, commonly referred to as

the "safe harbor", provides a person that solicits acceptance or rejection of a plan, in good faith

and in compliance with the applicable provisions of this title, or that participates, in good faith

and in compliance with the applicable provisions of this title, in the offer, issuance, sale, or

44

purchase of a security, offered or sold under the plan, of the debtors, of an affiliate participating

in a joint plan with the debtors, or of a newly organized successor to the debtors under the plan,

is not liable, on account of such solicitation or participation, for violation of any applicable law,

rule, or regulation governing solicitation of acceptance or rejection of a plan or the offer,

issuance, sale, or purchase of securities.

**ARTICLE 20**

**LIQUIDATION ANALYSIS**

20.1    **Liquidation Analysis.**  Attached hereto as Exhibit "A".  The liquidation analysis

establishes all property covered by security interest.  The Debtor has concluded that the Plan

provides to each creditor and Interest Holder a recovery with a present value at least equal to the

present value of the distribution which such person would receive if the Debtor  were liquidated

under Chapter 7 of the Bankruptcy Code.

In evaluating its current business operations, the Debtor has considered the alternative of

immediately liquidating the assets, and have taken into account the nature, status, and underlying

values of the tangible and intangible assets.  The determination of the hypothetical proceeds from

the sale of assets in a Chapter 7 liquidation is an uncertain process involving numerous

underlying assumptions.  Accordingly, there can be no assurance that the assumptions employed

by the Debtor in determining the liquidation value of the assets will result in an accurate

estimation of such liquidation values.

The liquidation value stated herein assumes that all assets of the Debtor would be

liquidated in the context of a Chapter 7 case and assumes the present value of such liquidation as

of March 1, 2019.  The assumptions utilized in the analysis considered the estimated liquidation

value of the assets and estimated amount of Claims that would be allowed, together with an

estimate of certain administrative costs and other expenses which would likely result during the

liquidation process.  While the Debtor believes the assumptions underlying the Liquidation

Analysis are reasonable, the validity of such assumptions may be affected by the occurrence of

45

events, and the existence of conditions not now contemplated or by other factors, may of which

will be beyond the control of the Bankruptcy Court, the Debtor and any trustee appointed for the

Debtor.  The actual liquidation value of the Debtor may vary from that considered herein and the

variation may be material.

Typically Chapter 7 liquidations result in expenses of 10-15 percent of the sales price.

With auction or real estate commissions usually being six to ten percent that cost is considered

reasonable.

The Debtor believes in a liquidation, creditors would not receive the full amount of their

claims, and indeed after payment of administrative, secured, and priority claims, general

unsecured creditors would receive no distribution.

## ARTICLE 21

## FINANCIAL PROJECTIONS

Attached as Exhibit "B" are Debtor's projections of income and expenses for the term of

the Plan.        The Projections underlying the Plan are based on certain assumptions regarding

the Debtor's operations.  The Projections were not prepared with a view toward public disclosure

or compliance with the guidelines established by the Securities Exchange Commission and were

not prepared with a view towards compliance in all instances with the guidelines established by

the American Institute of Certified Public Accountants regarding financial forecasts.  The

Projections have not been prepared in accordance with generally accepted accounting principles

in all instances, are not audited, and have not been reviewed or compiled by the Debtor's

independent public accountants.  While presented with numerical specificity, the Projections are

based upon a variety of assumptions (which the Debtor believes is reasonable) which may not be

realized, and are subject to significant business, economic and competitive uncertainties and

contingencies, many of which are beyond the Debtor's control.  Consequently, the inclusion of

the Projections herein should not be regarded as a representation by the Debtor (or any other

person) that the Projections will be realized, and actual results may vary materially from those

presented below.  Due to the fact that the Projections are subject to significant uncertainty and

are based upon assumptions which may not prove to be correct, neither the Debtor nor any other person assumes any responsibility for their accuracy or completeness.

## ARTICLE 22

## CONCLUSION

The Debtor believes the Plan is in the best interests of all Creditors and Interest Holders and strongly encourages all holders of Claims against the Interests in the Debtor to vote to accept the Plan and to evidence such acceptance by promptly returning their Ballots to ensure that they will be received no later than the time fixed by the Court order.

Respectfully submitted,

*/s/ Paul E. Jennings*
Paul E. Jennings
Paul E. Jennings Law Offices, P.C.
805 South Church Street, Suite 3
Murfreesboro, TN 37130
Telephone:  (615) 895-7200
Facsimile:  (615) 895-7294
E-mail: paulejennings@bellsouth.net

Attorney for Debtor-in-Possession

*/s/Steven M. Heath*
Steven M. Heath

*/s/Peggy B. Heath*
Peggy B. Heath